# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00099-CV

---

### In re Commitment of Melvin Lee Allen

---

**FROM THE 403RD DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-GN-23-000813, BRANDY MUELLER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

In three issues, Melvin Lee Allen challenges the trial court's final judgment in this civil-commitment case. *See generally* Tex. Health & Safety Code §§ 841.001–.209. We affirm.

## BACKGROUND

The State filed a petition seeking civil commitment of Allen based on the allegation that he is a sexually violent predator. *See id.* §§ 841.003(a) (defining "sexually violent predator"), .081 (directing trial court to issue order of civil commitment of person found to be "sexually violent predator").

Prior to voir dire, Allen waived his right to appear at trial and argued to the trial court that he should be allowed not to attend the trial. The State's position was that he could choose not to attend trial but that it would still be able to call him as a witness. The trial court denied Allen's waiver of his appearance and explained that because the State intended to call Allen as a witness the trial court would require his presence throughout the trial.

During the trial, the trial court admitted a penitentiary packet that documented Allen's convictions for four sexually violent offenses. The State also called two witnesses—Allen and Doctor Stephen Thorne, a clinical psychologist.

Allen admitted that he was currently incarcerated and that he had previously pleaded guilty to four sexual assaults. He also admitted that he refused to participate in clinical interviews with two different psychologists, including Dr. Thorne. He explained that he thought that he was refusing to meet with "TV lawyers." The majority of his remaining testimony comprised his responding "I plead the Fifth" over 90 times, to the State's questions regarding specific facts pertaining to his four convictions.

Dr. Thorne testified that he had done 350 to 400 behavioral-abnormality evaluations and had testified at trials about his evaluations approximately 75 times. He opined that Allen has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See id.* § 841.003(a) (defining "sexually violent predator" for civil commitment purposes as: (1) "a repeat sexually violent offender"; and (2) a person who "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence"). Dr. Thorne explained that a person's history is important for him to consider when forming his opinion.

Dr. Thorne testified regarding the specific details of each of Allen's prior convictions. The trial court allowed the testimony over Allen's hearsay objection with the following limiting instruction:

> Ladies and gentlemen of the jury, hearsay is not normally admissible. In this case certain hearsay information will be allowed. It is contained in records that have been reviewed by an expert. Those will be admitted before you through expert

2

testimony. Such hearsay will be admitted only for the purpose of showing the basis of the expert's opinion, and cannot be considered as evidence to prove the truth of the matter asserted. You may not consider the hearsay information for any other purpose, including whether the facts alleged in the records are true.

Dr. Thorne described four sexual assaults that Allen had pleaded guilty to and had been convicted of, all of which were against female victims who were strangers to Allen. He testified that the first offense was committed in October 2000 against an exotic dancer while she was working. He also testified that Allen had been consuming alcohol prior to the assault and that Allen was arrested for that offense. The second, third, and fourth assaults occurred in July and August 2008, and all three involved Allen picking a woman up in his car and sexually and physically assaulting her. The second and third victims were prostitutes, while it was unclear whether the fourth one was as well. The fourth offense was an aggravated sexual assault involving a gun.

Dr. Thorne explained that in his experience, sex offenders who target strangers and who consume alcohol prior to committing offenses have an increased risk for sexual recidivism. He also explained that the fact that the offenses were not all clustered together in time but were instead spread out over many years and that Allen reoffended after he was arrested for the first offense were important factors that he considered in forming his behavioral-abnormality opinion. He also opined that the third and fourth offenses included indicators of "sexual sadism," which he defined as "being aroused by the pain or the suffering or the humiliation of the person you are being sexual with."

After Dr. Thorne finished discussing the impact of the four convictions on his opinion, he testified regarding an unadjudicated offense, which involved an allegation of a sexual assault from March 2002 ("the allegation"). Earlier in the trial and before the jury heard any

3

testimony, Allen questioned Dr. Thorne on voir dire and objected to the admission of evidence of the allegation under Rule 705(d). *See* Tex. R. Evid. 705(d) (establishing that expert may not disclose otherwise inadmissible underlying facts or data to jury if "their probative value in helping the jury evaluate the opinion is outweighed by their prejudicial effect").

Outside the presence of the jury, Dr. Thorne testified that the allegation did not have a significant impact on his opinion that Allen had a behavioral abnormality because he had already formed his opinion based on the four convictions and would still have that opinion if he never learned of the allegation. However, he explained that if the allegation occurred, that would strengthen his opinion and that if it was not true, it would not have changed his opinion. He further explained that it was relevant to his opinion because it happened in 2002, which filled a gap in the timeline between the first offense in 2000 and the next three in 2008 and had facts very similar to the 2008 offenses, including targeting a stranger who was a prostitute and was lured into his car and violently assaulted. He also agreed that it was important information for the jury to understand the full basis for his opinion.

The trial court overruled Allen's objection to Dr. Thorne testifying about the allegation. Allen renewed his objection when Dr. Thorne was asked about the allegation during his testimony in front of the jury, and the trial court again overruled Allen's objection. Dr. Thorne testified regarding the specifics of that offense and explained that if it was true, it would be relevant to his opinion because it was factually similar to the three later convictions and because of the significance of it in the timeline. He also testified that police had linked Allen to the unadjudicated assault based on DNA evidence collected from the victim's clothing.

The jury unanimously found that Allen is a sexually violent predator. *See* Tex. Health & Safety Code § 841.003(a). Consistent with the verdict, the trial court signed a

4

civil-commitment order involuntarily confining Allen to a residential facility upon his release from incarceration. *See id.* § 841.081 (directing trial court to issue order of civil commitment of person found to be "sexually violent predator").

**DISCUSSION**

*Denial of right to not attend trial*

Allen's first issue contends that the trial court erred when it denied his request to not attend the trial in person but rather to appear through his attorney. *See id.* § 841.061(d)(1), (2) (providing that defendant in civil-commitment case has "the right to appear at the trial" and "the right to waive the right to appear at the trial and appear through the person's attorney").

First, we consider whether the trial court erred when it required Allen to attend his trial in person. Texas Health and Safety Code Chapter 841 creates the procedure for civil-commitment proceedings for determining if a person is a sexually violent predator and thus must be civilly committed. Subsection 841.061(d) provides a list of rights that a person accused of being a sexually violent predator has at trial, including: (1) the right to appear at the trial; (2) the right to waive the right to appear at the trial and appear through the person's attorney; (3) the right to present evidence; (4) the right to cross-examine witnesses; and (5) the right to view and copy all petitions and reports in the court's file. *See id.* § 841.061(d). Denying a defendant's statutory rights afforded in civil-commitment proceedings is error. *In re Commitment of Bluitt*, 605 S.W.3d 199, 204 (Tex. 2020) (affirming appellate court's holding that it was error to proceed with trial without affording defendant his right to appear at trial). Further, the right to appear at the trial is the accused's "right to be physically present." *Id.* (holding that "right to appear at the trial include[s] the right to appear in person"). Thus, the first two statutory rights

5

established by Section 841.061(d) give those accused of being a sexually violent predator the right to appear physically in person at the trial or the right to waive the physical appearance and not appear in person but rather through their attorney during the trial. *See* Tex. Health & Safety Code § 841.061(d)(1), (2); *Cadena Comercial USA Corp. v. Texas Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017) (explaining that when construing statutory provisions "we look to and rely on the plain meaning of a statute's words as expressing legislative intent unless a different meaning is supplied, is apparent from the context, or the plain meaning of the words leads to absurd or nonsensical results").

Here, the trial court denied Allen's exercise of his statutory right to waive in person appearance during the trial because the State intended to call him as a witness. However, the State's right to call Allen as a witness and his right to appear through his counsel at trial do not conflict but rather coexist as in any civil case. A party in a civil case "may appear and prosecute or defend his rights therein, either in person or by an attorney of the court," Tex. R. Civ. P. 7, and "[e]ither party to a suit may examine the opposing party as a witness, and shall have the same process to compel his attendance as in the case of any other witness," *id.* R. 181. Thus, the State could have compelled Allen to testify as a witness without the trial court requiring him to attend the rest of the trial. Indeed, the State argued this to the trial court. We conclude that the trial court did not err in requiring Allen's presence to testify at trial.

However, to the extent Allen is challenging the trial court requiring his presence outside of when he testified as a witness, we conclude that the trial court erred by denying Allen his right to not appear in person but rather through his attorney.

We next consider whether Allen was harmed by the error. *See In re Commitment of Bluitt*, 562 S.W.3d 665, 673–76 (Tex. App.—Fort Worth 2018) (conducting harm analysis

6

after concluding that trial court erred by not affording defendant statutory right in civil commitment proceeding), *aff'd*, 605 S.W.3d 199 (Tex. 2020). We will only reverse a judgment on appeal for trial-court error if we conclude that it "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case to the court of appeals." Tex. R. App. P. 44.1(a). Allen contends that he was harmed by the trial court's denial of his right to not appear in person because the State used Allen's multiple responses that he "pleaded the Fifth" against him. *See In re Commitment of Gipson*, 580 S.W.3d 476, 486 (Tex. App.—Austin 2019, no pet.) ("In a civil case, a fact finder may draw reasonable inferences from a party's invocations of the Fifth Amendment" (citing Tex. R. Evid. 513(c))). Allen further contends that if the trial court had allowed him to exercise his right to not appear in person that he would not have been present to testify against himself, that he would not have had to invoke his Fifth Amendment right in front of the jury, and that the State could not have used his responses against him. Allen's contention is based on his reasoning that his statutory right not to appear at trial was also a right not to be called as a witness and that Chapter 841 controls over Rule of Civil Procedure 181.

As we have discussed above, we disagree. Even if Allen had not been required to be physically present throughout the trial, he still could have been compelled to testify as a witness. *See* Tex. R. Civ. P. 180, 181. Thus, the harm he contends he suffered that resulted from his testimony does not entitle him to relief because it was not error to require Allen to testify.

Allen does not contend that he suffered any harm as a result of being required to physically attend any other portion of the trial and none is apparent from the record. Because he does not contend that any harm occurred as a result of the portions of the trial that he was

7

erroneously required to attend, we conclude that Allen was not harmed by the trial court's error to require his presence at times when he was not testifying. We overrule Allen's first issue.

*Expert testimony of unadjudicated offense*

In his second issue, Allen contends that the trial court erred by allowing Dr. Thorne to testify regarding the allegation from 2002. Specifically, he contends that because Dr. Thorne testified that the unadjudicated offense did not have a significant impact on forming his opinion that Allen had a behavioral abnormality, the testimony was irrelevant, lacked any probative value, and was inadmissible.

We review a trial court's evidentiary decisions for an abuse of discretion. *In re Commitment of Browning*, 113 S.W.3d 851, 865 (Tex. App.—Austin 2003, pet. denied). A trial court abuses its discretion when it fails to follow guiding rules and principles. *Gipson*, 580 S.W.3d at 486. The trial court has extensive discretion in its evidentiary rulings, and thus, we will uphold its decision if it is within the zone of reasonable disagreement. *Id.*

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. Irrelevant evidence is not admissible. *Id.* R. 402. An expert may testify to the underlying facts or data on which the expert bases an opinion. *See id.* R. 705(a). However, otherwise inadmissible evidence relied upon by an expert should be excluded if the probative value in helping the jury evaluate the opinion is outweighed by the prejudicial effect. *Id.* R. 705(d).

First, we consider the relevancy of the evidence. Although Dr. Thorne testified that the 2002 allegation did not have a significant impact on his opinion because his "opinion

was already that [Allen] had a behavioral abnormality," he also testified that the unadjudicated offense was relevant to understanding his opinion because, if true, it would strengthen it. He explained that the allegation was relevant because it occurred between the 2000 offense when Allen was arrested and the three 2008 offenses. Dr. Thorne explained that offenses spread out over years and happening after an arrest are significant factors that he considers in forming his opinion. Further, the allegation was similar to two of the 2008 offenses, in which Allen propositioned a prostitute from his car and then sexually assaulted her. We conclude that the evidence was relevant and had probative value. *See Browning*, 113 S.W.3d at 866 (holding that "[a] person's history of sexually violent conduct is highly relevant to whether he suffers from a behavioral abnormality that makes it difficult for him to control his impulses to commit sexually violent offenses"); *In re Commitment of Regalado*, 598 S.W.3d 736, 742 (Tex. App.—Amarillo 2020, no pet.) (holding that underlying facts of offenses that were unknown to expert witness when developing his initial opinion were still relevant and noting that expert "knew of and had considered them by the time he informed the jury of his opinion").

Having determined that the evidence had probative value, we must consider "if the danger that [the evidence] will be used for a purpose other than as explanation or support for the expert's opinion outweighs their value as explanation or support or are unfairly prejudicial." Tex. R. Evid. 705(d). Dr. Thorne testified that experts in his field regularly considered unadjudicated sexual-assault allegations in forming their opinions. *See In re Commitment of Salazar*, No. 09-07-00345-CV, 2008 WL 4998273, at *4 (Tex. App.—Beaumont Nov. 26, 2008, pet. denied) (mem. op.) (explaining that "[w]hen an expert relies upon hearsay in forming his opinion, and it is of a type reasonably relied upon by such experts, the jury is generally permitted to hear it"). Any danger that the evidence would be used for an improper purpose was mitigated

9

by the trial court's limiting instruction. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 771 (Tex. 2003) (directing that "[u]nless the record demonstrates otherwise, an appellate court must presume that the jury followed [the trial court's] instructions"); *In re Commitment of Nickerson*, No. 03-23-00126-CV, 2024 WL 3731806, at *3 (Tex. App.—Austin Aug. 9, 2024, no pet. h.) (mem. op.) (concluding that limiting instructions "cured any harm that could have stemmed from the challenged testimony about the hearsay record"). Further, the facts of the 2002 allegation were no more prejudicial than those of his convictions but, rather, were very similar.

On this record we cannot conclude that the trial court abused its discretion when it determined that the probative value of the allegation was not outweighed by its prejudicial effect. Thus, we conclude that the trial court did not err in admitting the evidence and overrule Allen's second issue.

*Closing argument*

In his third issue, Allen contends that the trial court erred when it overruled his objection to the State's closing argument. Specifically, Allen complains of the following remarks:

> That is about somebody who has a serious condition who is able to do that to a woman. I mean, just think about that in and of itself without expert testimony. Use your common sense. A man who would do this to a woman, strangle a woman, have a woman urinate in the seat while he's assaulting her, hit a woman, use this level of force against these women[.]

Allen objected to this argument on the ground that it was "addressing hearsay information as fact in closing arguments, [and was] improper argument." The trial court overruled the objection.

10

A trial court's ruling on an objection to closing argument is reviewed for an abuse of discretion. *In re Commitment of Hill*, 621 S.W.3d 336, 344 (Tex. App.—Dallas 2021, no pet.). Proper jury argument generally falls into one of four categories: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to an argument made by opposing counsel, or (4) plea for enforcement of a law. *Id.*; *see also* Tex. R. Civ. P. 269.

It is important to our analysis to put the objected-to argument into context. During Allen's closing argument, his counsel made an argument that the trial was "not a game" and told the jury:

> I will tell you that this is not a game. This is not Wheel of Fortune, this is not Jeopardy, this is not a jigsaw puzzle. It's not something you put up there and say, oh, look at all those puzzle pieces that are in place. That's not what this is about. What it's about is, did they prove to you that Melvin Allen as he is today is a sexually violent predator[.]

The State began its rebuttal argument as follows:

> [Opposing counsel] is right. This isn't a game. This is about a man who sexually assaulted four different women over a period of time. That is not about a game at all.

This was immediately followed by the complained-of argument. The trial court could have reasonably understood the State's argument to be a response to Allen's closing argument.

Additionally, after the trial court overruled the objection, the State clarified the argument, stating, "The judgment and convictions that are in evidence, that's not hearsay. He's been convicted of three sexual assaults and an aggravated assault." The State then continued its argument focusing on Allen's reliance on the Fifth Amendment to not answer the State's questions about the facts underlying his convictions. In civil case, juries "may make negative

11

inferences based upon the assertion of the privilege" of the Fifth Amendment right against self-incrimination. *V.C. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-18-00746-CV, 2019 WL 1388725, at *2 (Tex. App.—Austin Mar. 28, 2019, pet. denied) (mem. op.) (citing *Texas Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 763 (Tex. 1995)). Indeed, each detail in the complained-of argument—hitting and strangling a woman and causing her to urinate while assaulting her—was presented in questions that Allen avoided answering by invoking the Fifth Amendment. Further, Dr. Thorne testified that the details showing sexual sadism were important to his opinion that Allen has a behavioral abnormality. The trial court could have reasonably concluded that the State's argument was a summation of, or reasonable deduction from, the evidence.

Allen contends that by overruling his objection, the trial court was condoning the State's reliance on hearsay testimony as substantive evidence. However, the record does not support this contention. As discussed above, the trial court could have reasonably understood the argument to be proper. Additionally, at the conclusion of the State's closing argument, the trial court reminded the jurors that they were to consider the evidence and that the attorneys' arguments were not evidence. The court's charge included an instruction not to consider hearsay information as evidence. Thus, the record does not support that the trial court condoned improper consideration of hearsay or that the jury did so. *See Golden Eagle Archery*, 116 S.W.3d at 771 ("Unless the record demonstrates otherwise, an appellate court must presume that the jury followed these instructions.").

Based on this record and the applicable standard of review, we cannot conclude that the trial court abused its discretion in overruling Allen's objection to the State's closing argument. We overrule Allen's third issue.

## CONCLUSION

Because we overrule all of Allen's issues, we affirm the trial court's order of civil commitment.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed: August 29, 2024